IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JENNIFER D. KNUDTSON,           )
                                )
          Plaintiff,            )
                                )
                                )  Case No. CIV-19-198-KEW
                                )
COMMISSIONER OF THE SOCIAL      )
SECURITY ADMINISTRATION,        )
                                )
          Defendant.            )

## OPINION AND ORDER

Plaintiff Jennifer D. Knudtson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that she was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 44 years old at the time of the decision. She has a GED. She worked in the past as a cashier II, garden salesperson, housekeeper supervisor, and insurance customer service representative. Claimant alleges an inability to work beginning on November 17, 2015, due to limitations resulting from degenerative disc disease, osteoarthritis, left shoulder tendinopathy, and chronic obstructive pulmonary disease (COPD).

## Procedural History

On February 24, 2017, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Her application

was denied initially and upon reconsideration. On May 29, 2018,
ALJ Jodi B. Levine conducted an administrative hearing by video
from Oklahoma City, Oklahoma. Claimant appeared for the hearing
from Ardmore, Oklahoma. On October 2, 2018, the ALJ entered an
unfavorable decision. Claimant requested review by the Appeals
Council, and on May 21, 2019, it denied review. As a result, the
decision of the ALJ represents the Commissioner's final decision
for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential
evaluation. She determined that while Claimant suffered from severe
impairments, Claimant did not meet a listing and retained the
residual functional capacity ("RFC") to perform light work, with
limitations.

## Errors Alleged for Review

Claimant asserts the ALJ's RFC assessment is erroneous and
not based on substantial evidence because it did not include any
restrictions addressing Claimant's need to use a nebulizer.

## RFC Determination

In her decision, the ALJ found Claimant suffered from severe
impairments of degenerative disc disease, osteoarthritis, left
shoulder tendinopathy, and COPD. (Tr. 29). She determined Claimant
could perform light work, as she was able to lift and/or carry
twenty pounds occasionally and ten pounds frequently; stand and/or

walk up to one hour at a time for a total of four hours in an eight-hour workday; sit up to one hour at a time for a total of six hours in an eight-hour workday; change positions at the workstation without an additional break; and occasionally kneel, stoop, and climb ramps and stairs, but never crawl, crouch, or climb ladders, ropes, or scaffolds. Claimant could occasionally reach and push and/or pull with her upper extremities. She could frequently handle, finger, and grip with her non-dominant left upper extremity and hand, but she could not perform overhead reaching. Claimant could have occasional exposure to temperature extremes, but no exposure to heavy industrial vibrations, fumes, odors, dusts, gases, poor ventilation, unprotected heights, or dangerous hazardous moving machinery. (Tr. 31).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of production worker and surveillance system monitor, both of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 40-41). As a result, the ALJ concluded Claimant was not under a disability from November 17, 2015, the alleged onset date, through June 30, 2018, the date last insured. (Tr. 41).

Claimant contends the ALJ's RFC assessment completely fails to address her need to frequently utilize a nebulizer up to four times per day, as prescribed by her treating physician, Margaret Western, M.D. On several occasions, Dr. Western mentioned in

treatment notes that Claimant's treatment for COPD included the frequent use of a nebulizer. For example, at a March 2017 appointment, Dr. Western noted diminished breath sounds on the right. After a breathing treatment, she noted Claimant had good air movement throughout. Claimant was prescribed nebulizer treatments up to four times per day for 90 days. (Tr. 414-16). In September of 2017, Claimant continued to experience diminished breath sounds throughout her lungs, and she continued to utilize her nebulizer up to four times per day. (Tr. 612-14). At her December 2017 appointment, Dr. Western listed under current medications Claimant's use of a nebulizer up to four times per day. (Tr. 621). At appointments in March of 2018, Dr. Western continued to list as a current medication Claimant's nebulizer use four times daily. (Tr. 623, 625).

On March 26, 2018, Dr. Western completed a Residual Functional Capacity Questionnaire and an Onset Questionnaire. She had treated Claimant since August of 2016. Her opinions regarding Claimant were based on her direct observation/treatment, physical examination, historical medical records, imaging studies, laboratory results, and her own experience and background. (Tr. 620). Regarding her respiratory impairment, Dr. Western found Claimant suffered from frequent shortness of breath even with use of a nebulizer and inhaler. She listed that Claimant required frequent nebulizer treatments, when responding to a question about

6

whether Claimant used an assistive device. She indicated "yes" when answering the question of whether Claimant needed to take unscheduled breaks or would need to have periods of walking around during an eight-hour workday. (Tr. 618-19).

In the decision, the ALJ determined Claimant's COPD was a severe impairment, but it did not meet a listing. (Tr. 29, 31). She discussed x-rays of Claimant's chest from September 19, 2016, indicating bilateral hyperexpansion of the lungs, consistent with COPD, but Claimant's lungs were free of confluent infiltrates with no pleural effusions, and there was confirmation of normal heart size and contour. (Tr. 33, 449). The ALJ referenced that Claimant had sought treatment for breathing issues from the emergency room (Tr. 33, 501-11), and she "ha[d] been prescribed inhalers and use[d] a nebulizer as prescribed by her primary care provider with generally good control. (Tr. 33, 612-14). She noted Claimant's consultative pulmonary function testing on June 27, 2020, "did not approach listing level threshold requirements." (Tr. 34, 590-96). Regarding an appointment with Dr. Western in December of 2017, the ALJ referenced Claimant's lungs were clear to auscultation bilaterally with good air movement and no wheezes, rales, or rhonchi. (Tr. 34, 621). She also referenced Claimant's two visits with Dr. Western in March of 2018, noting Claimant was doing well on her medications. (Tr. 34, 623-26).

When discussing the opinion evidence, the ALJ summarized the hearing testimony of Robert Thompson, M.D., the impartial medical expert. Dr. Thompson acknowledged Claimant's COPD, commented that the exertional limitations of sitting, standing, and walking for Claimant would be limited by endurance secondary to her COPD, and Claimant was to avoid all work at unprotected heights and around moving mechanical parts, as well as around dusts, odors, and industrial vibrations, with occasional exposure to extreme cold and heat. (Tr. 37-38). When reviewing Dr. Western's functional limitations, Dr Thompson referenced her notation that Claimant required frequent nebulizer treatments, but he testified he had "no idea how frequent that would be. So I can't disagree with the treating physician's point of view." (Tr. 38, 61-62).

The ALJ also discussed portions of the March 2018 medical source statement completed by Dr. Western. However, the ALJ did not directly discuss Dr. Western's notations that Claimant required frequent nebulizer treatments or that Claimant would need to take unscheduled breaks. The ALJ determined that because there were "multiple inconsistencies with minimal support for the stated findings, the statement of Dr. Western is given little weight or consideration." (Tr. 39).

The ALJ further discussed Claimant's testimony that part of the reason she was unable to work was because of her COPD. She was short of breath, making it hard to even walk to the mailbox and

8

back. She testified she was doing four nebulizer treatments per day, with each lasting 20 minutes. (Tr. 35). The ALJ determined it was not reasonable to conclude from the evidence that Claimant's symptoms were as severe as alleged. She also noted that Claimant's routine "did not appear restricted by her alleged disability; but, rather by choice." (Tr. 36). The ALJ ultimately found the evidence in the record supported her RFC assessment that Claimant could perform a wide range of sedentary and light work. (Tr. 39).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and

a specific medical opinion on the functional capacity in question."
*Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

Claimant argues her case is analogous to the case of *Klitz v. Barnhart*, 180 Fed. Appx. 808 (10th Cir. 2006), wherein the Tenth Circuit determined the ALJ failed to account for the effect plaintiff's use of a nebulizer would have on her ability to work. *Id*. at 810. One of the reasons the court provided for its decision was that the ALJ needed to determine whether "[t]he fifteen to twenty-five minute process of using the nebulizer one or two times a day on two or three days a week may be disruptive of a normal work day and affect [the] ability to perform the jobs the VE identified and on which the ALJ based his decision." *Id*.

Defendant argues the ALJ's RFC accounts for all of Claimant's limitations and is supported by the record as a whole. Defendant asserts that the ALJ gave substantial weight to the opinion of Dr. Thompson, the medical expert, who assigned several limitations for Claimant relating to her respiratory impairments and noted that he could not "quantitate" the finding, regarding Claimant's need for frequent nebulizer treatments. Defendant contends the ALJ additionally determined the evidence did not support the degree of limitation alleged by Claimant based upon her reported activities of daily living. Moreover, Defendant argues that Dr. Western found Claimant would not need to take unscheduled breaks during the workday. Further, Defendant maintains that Claimant's case is

different from *Klitz*, as *Klitz* addressed a plaintiff who needed to use a nebulizer at home, and the record was unclear if she had to use it at "random, uncontrollable times."

The Court finds *Klitz* requires a remand of this case. As per Dr. Western's prescription, Claimant testified she used her nebulizer four times per day, with each treatment lasting 20 minutes. Moreover, contrary to Defendant's argument, Dr. Western indicated Claimant would need to take unscheduled breaks during the workday. Because it is possible Claimant may need to utilize her nebulizer at "random, uncontrollable times," the ALJ's decision is remanded for further consideration of the effect Claimant's frequent use of a nebulizer for breathing treatments would have on her ability to perform work.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED** and the case is **REMANDED** for further proceedings consistent with the Opinion and Order.

11

IT IS SO ORDERED this 28th day of September, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE